UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MILA K. HINES,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

                Defendant.

CASE NO. 11-cv-05252 BHS

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

NOTED: March 9, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 14, 16, 17).

Everyone agrees that plaintiff's condition improved significantly from the alleged onset date of her disability on February 1, 2007, until the time of the hearing before the ALJ on July 7, 2009. However, her disability should not have been judged on her

condition at the time of hearing, but rather her condition beginning from the time of her alleged initial onset. Because the ALJ failed to evaluate properly her condition during this period, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

BACKGROUND

Plaintiff, MILA K. HINES, was born in 1975 and was 33 years old on her alleged onset date of February 1, 2007 (Tr. 232, 91).

Plaintiff consistently has reported a history of childhood sexual abuse, as well as physical abuse by the fathers of her children (Tr. 136, 232, 341). She had no significant work history (Tr. 97). She has six children. On her alleged onset date, she did not have custody of any of her children due to a history of drug abuse and domestic violence (Tr. 232). Plaintiff entered chemical dependency treatment on June 8, 2006 (Tr. 412). At the time of her alleged onset of disability, she had been clean and sober for 8 months. At that time, she was evaluated by Dr. Norma Brown, Ph.D. ("Dr. Brown") (Tr. 232-35). Dr. Brown noted that plaintiff performed poorly on all aspects of the mental status examination, such as digit span, counting backwards by sevens and spelling "world" backwards (Tr. 237). Her immediate and remote memory were impaired (Tr. 236). Dr. Brown rated plaintiff as having marked limitations in her ability to exercise judgment and make decisions, and that she had very poor cognitive skills due to high anxiety and depression (Tr. 234). Dr. Brown also found that plaintiff had severe limitations in her abilities to relate appropriately to co-workers and supervisors, and to tolerate the pressures of a normal work setting (Tr. 234). Dr. Brown concluded that plaintiff was

chronically mentally ill and that these impairments would continue for a minimum of 12 months (Tr. 235). Administrative Law Judge Donald J. Willy ("the ALJ") also concluded that plaintiff had significant mental impairments including a personality disorder, a major depressive disorder, a bipolar disorder and post traumatic stress disorder (Tr. 14). He also concluded that plaintiff had post polysubstance abuse disorder (id.).

The ALJ found that plaintiff had been clean and sober since plaintiff's chemical dependency treatment in June of 2006 (Tr. 14). Following treatment, she attended classes and therapy at Kitsap Mental Health Services and at Agape House. She engaged in vocational rehabilitation and began attending school in winter of 2009 (Tr. 160). She regained custody of her four youngest children. According to her counselor at Agape, since beginning treatment in December of 2006, plaintiff has "worked hard and diligently to clean up the wreckage of her past and begin to apply skills learned to her life. Ms. Hines appears to be internally motivated to her recovery and has applied skills learned to her everyday life" (Tr.411). She showed no evidence of malingering (Tr. 232).

At the time of the hearing on July 7, 2009, the vocational expert, Mr. Joe Cantella, concluded that plaintiff could perform light, semi-skilled work as a groundskeeper, laundry laborer, parking lot attendant, or photocopy machine operator (Tr. 39-40). Based on this testimony, the ALJ concluded that despite plaintiff's severe impairments, plaintiff had the residual functional capacity to perform certain jobs that existed in significant numbers in the national economy and concluded that plaintiff was not under a disability (Tr. 18, 19). Importantly, when given the plaintiff's limitations noted by Dr. Brown in 2007, the vocational expert testified that if plaintiff had those limitations, she would not

have been capable of maintaining employment in the jobs he listed (*compare* Tr. 41-42 *with* Tr. 234-36). However, he based his conclusions regarding her vocational capacity based on the testimony of reviewing psychologist, Dr. Glenn F. Sternes, Ph.D. ("Dr. Sternes") (Tr. 17), who admittedly "averaged" her functional capacity during the period of alleged disability.

> Q. So the evaluation that you gave, was that only the current time period as opposed to how she did throughout the time period covered by the application?
> A. (Dr. Sternes) Well I'm asked to comment on the relevant time period.
> Q. And do you think your testimony summed up the whole time period or just the end of it?
> A. I try to take an average of how the person is functioning. Since she's improved, it may give a – maybe a worse impression then she's functioning right now.

(Tr. 38).

After Dr. Brown's diagnosis of various mental disorders in February 2007, she recommended that plaintiff have "SSI facilitation" (Tr. 238). There is no other evidence that plaintiff's limitations improved for at least a 12-month period. The first indication that plaintiff had shown significant improvement was in June of 2008 when Jennifer Drake, ARNP concluded that plaintiff was tolerating her medication well and was showing improvement in her mood (Tr. 377). The ALJ noted that this improvement had occurred and then concluded that she showed continued recovery by doing well in her speech class and then eventually was showing no need for therapy or follow-up visits (Tr. 17 (*citing* Exhibit 15F at 9, i.e., Tr. 368)). The ALJ, based on this evidence, concluded

that the claimant was not under a disability as defined by the Social Security Act since March 8, 2007 (Tr. 19).

PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security and disability income benefits on March 15, 2007 (Tr. 91-96). Her applications were denied initially and following reconsideration (Tr. 53-55). Plaintiff requested a hearing, which was held before the ALJ on July 7, 2009 (Tr. 20-44).

On January 15, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20 C.F.R. § 404.981.

On April 5, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF No. 3). On June 15, 2011, defendant filed the sealed administrative transcript regarding this matter ("Tr.") (ECF No. 9). In her Opening Brief, plaintiff raises the following issues:

1. The ALJ's determination that plaintiff improved does not show that she failed to meet the definition of disability.

2. The ALJ did not give sufficient reasons for rejecting the opinions of reviewing psychologists Leslie Postovoit, Ph.D. and Cynthia Collingwood, Ph.D.

3. The ALJ erred when he gave no reasons for rejecting the opinion of examining psychologist, Norma Brown Ph.D.

4. The ALJ did not give sufficient reasons for rejecting the testimony of Carol Campbell and Tiffany Segovia King.

1        5.  The ALJ did not give clear and convincing reasons for rejecting plaintiff's

2            testimony.

3        Plaintiff requests that the Court reverse the Commissioner's decision and remand

4    the case for further proceedings to consider further the medical evidence, plaintiff's

5    testimony, and the lay witness testimony.

6                                    STANDARD OF REVIEW

7        Plaintiff bears the burden of proving disability within the meaning of the Social

8    Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.

9    1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines

10   disability as the "inability to engage in any substantial gainful activity" due to a physical

11   or mental impairment "which can be expected to result in death or which has lasted, or

12   can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

13   §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

14   impairments are of such severity that plaintiff is unable to do previous work, and cannot,

15   considering the plaintiff's age, education, and work experience, engage in any other

16   substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

17   1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

18       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

19   denial of social security benefits if the ALJ's findings are based on legal error or not

20   supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d

21   1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir.

22   1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In

the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

1. The ALJ's determination that plaintiff improved does not show that she failed to meet the definition of disability.

Plaintiff notes in her opening brief: "The root error in this case is the degree to which plaintiff improved after her alleged onset date and when that improvement occurred." (ECF No. 14, page 8.) This Court agrees. The ALJ noted that when examining psychologist, Dr. Brown, first evaluated plaintiff in February 2007, plaintiff had marked limitations in cognitive and social functioning (Tr. 234). Dr. Brown recommended "SSI facilitation" (Tr. 238) and predicted that plaintiff's symptoms would last for at least 12 months (Tr. 235). The ALJ cites no medical evidence indicating any improvement by plaintiff during that 12-month period (see, e.g., Tr. 15-18). To the contrary, lay testimony from plaintiff's mother, who completed a function report on April 7, 2007, documented that plaintiff had difficulty concentrating and getting along with others (Tr. 126, 131) and that she was very depressed (Tr. 128). Although the ALJ noted that plaintiff's condition had improved from the initial onset date (Tr. 17), he cited no evidence to contradict that as of the alleged onset date plaintiff was disabled (Tr. 17-19).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d

1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).  Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).  The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct.  Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).  However, the ALJ "need not discuss *all* evidence presented."  Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected."  Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

Here, the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to contradict Dr. Brown's 2007 conclusions.  Instead, the earliest note the ALJ cited was a June 2008 progress note that indicated plaintiff was progressing with her treatment (Tr. 17 (*citing* Tr. 304)).  This was more than 12-months from the initial onset date.  The ALJ also cited a December 2008 note that her mood was improving (Tr. 17 (*citing* Tr. 377)) and a note from February 2009 indicating that she was doing well and had received an "A" in her speech class (Tr. 17 (*citing* Tr. 371)).  This is not a "detailed and thorough summary of the facts and conflicting clinical evidence"

which would allow an ALJ to reject an examining psychologist's opinion as of February of 2007. See Reddick,supra, 157 F.3d at 725.

Disability is an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C § 1382c(a)(3)(A). Since Dr. Brown concluded that plaintiff was severely impaired in a number of areas in February 2007, and that plaintiff's limitations were expected to last for at least twelve months (Tr. 232-37), the ALJ erred in rejecting Dr. Brown's opinion; the ALJ's decision lacks specific and legitimate reasons for rejecting that opinion; and, therefore, it is not supported by substantial evidence in the record.

2.  The ALJ did not give sufficient reasons for rejecting the opinions of reviewing psychologists Leslie Postovoit, Ph.D. and Cynthia Collingwood, Ph.D.

On May 16, 2007, plaintiff was evaluated by Washington State agency psychologist Leslie Postovoit, Ph.D. ("Dr. Postovoit"). Dr. Postovoit reviewed medical and psychological records, but did not examine plaintiff. Based on that review, Dr. Postovoit evaluated plaintiff's capacity to sustain activity over a normal work day and work week. She concluded that plaintiff was moderately limited in the following areas:

> The ability to understand and remember detailed instructions.
> The ability to carry out detailed instructions.
> The ability to maintain attention and concentration for extended periods.
> The ability to sustain an ordinary routine without special supervision.

> The ability to work in coordination with or proximity to others without being distracted by them.
>
> The ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
>
> The ability to interact appropriately with the general public.
>
> The ability to accept instructions and respond appropriately to criticism from supervisors.
>
> The ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.
>
> The ability to respond appropriately to changes in the work setting.
>
> The ability to set realistic goals or make plans independently of others.

(Tr. 259, 260).

Dr. Postovoit found that plaintiff "would manage best in work opportunities that allowed her to work with a few co-workers or more on her own." (Tr. 262.) Her opinion was adopted by Dr. Cynthia Collingwood, Ph.D. (see Tr. 291).

Regarding state agency medical consultants, the ALJ is "required to consider as opinion evidence" their findings, and also is "required to explain in his decision the weight given to such opinions." Sawyer v. Astrue, 303 Fed. Appx. 453, 455, 2008 U.S. App. LEXIS 27247 at **3 (9th Cir. 2008) (citations omitted) (unpublished opinion) ("[t]he ALJ's failure to consider the opinions of state agency consultants Salinas and Dr. Pritchard is not harmless . . . . the error here is directly relevant to the ultimate issue"). According to Social Security Ruling (hereinafter "SSR") 96-6p, "[a]dministrative law judges . . . . may not ignore the[] opinions [of state agency medical and psychological

consultants] and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2. This ruling also provides that "the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by State agency medical or psychological consultants," and said assessments "are to be considered and addressed in the decision." Id. at *4. Likewise, SSR 96-5p, provides that State agency "medical and psychological consultant findings about the nature and severity of an individual's impairment(s), including any RFC assessments, become opinion evidence," and "administrative law judges . . . . must address the[se] opinions in their decisions." SSR 96-5p, 1996 WL 374183 at *6.

In this case, the ALJ barely mentions the state evaluation. He concluded that the state evaluation "supported a finding of not disabled" (Tr. 17). He stated that "those opinions do deserve some weight," but then fails to enumerate what weight is given to these opinions (id.). Instead, the ALJ provided "great weight" to the opinion of reviewing psychologist, Dr. Glenn F. Sternes, Ph.D. ("Dr. Sternes"), an impartial medical expert who, according to the ALJ's decision, concluded that even with the combined effects of plaintiff's impairments, she was able "to follow work rules, use judgment, deal with supervisor, function independently, concentrate, understand, remember, and carry out simple job instructions, perform one or two step operations, respond appropriately to supervisors and co-workers, perform routine repetitive tasks and function in a work setting where public contact is minimal" (id.). The ALJ made no effort to compare the two conclusions, but is clear that there is at least some inconsistencies between them, including her need for additional supervision/support when beginning a new job, her

inability to get along with co-workers or peers without distracting them, and her limited ability to maintain attention and concentration for extended periods (*compare* Tr. 17 *with* Tr. 259-61).

It is not for this Court to determine how the ALJ reconciled the conclusions of the state agency consultants with the conclusions of the Administration's impartial medical expert. Simply stating that he gave Dr. Postovoit's opinion "some weight," without reconciling the inconsistencies in any meaningful fashion does not give this Court a sufficient explanation to determine if he properly considered this opinion evidence. This is legal error. Therefore, on remand, the ALJ should re-evaluate the residual functional capacity, taking into consideration the conclusions of the state agency experts and providing an explanation of the weight given to such opinions.

> 3. The ALJ erred when he gave no reasons for rejecting the opinion of examining psychologist, Norma Brown Ph.D.

Examining psychologist, Dr. Norma Brown, Ph.D. ("Dr. Brown"), provided opinions regarding plaintiff's functional limitations in February 2007. Among other things, she noted that plaintiff had severe limitations in her ability to relate appropriately with co-workers and supervisors and her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 234). Dr. Brown noted that plaintiff also had a number of marked limitations, including her ability to learn new tasks, her ability to exercise judgment and make decisions, and her ability to perform routine tasks (id.).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 13

Again, the ALJ noted that he took into consideration Dr. Brown's opinions and gave them "some weight," but instead, provided "great weight" to the non-examining, reviewing psychologist, Dr. Sternes (Tr. 17). No further explanation of his rejection of Dr. Brown's opinions was provided other than to state that portions of Dr. Brown's opinion "supports the above stated residual functional capacity" (Tr. 17), implicitly concluding that other portions, don't.

For the reasons set forth in Section 1, this Court concludes that the ALJ failed to provide "specific and legitimate reasons" for rejecting the opinion, <u>Embry v. Bowen</u>, 849 F.2d, 418, 422 (9th Cir. 1988), and failed to provide a detailed and thorough summary of the facts and conflicting clinical evidence. <u>See</u> <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725. Therefore, the ALJ's decision is not supported by substantial evidence in the record as a whole.

    4.    The ALJ did not give sufficient reasons for rejecting the testimony of Carol Campbell and Tiffany Segovia King.

Plaintiff's mother, Carol Campbell, provided a declaration indicating that plaintiff had rapid and severe mood swings (Tr. 432), became overwhelmed (Tr. 435) and sometimes "can't seem to accomplish anything for days." (Tr. 435.) Plaintiff's friend, Tiffany Segovia-King submitted sworn testimony that plaintiff often failed to complete tasks out of frustration (Tr. 429) and that "noises and people trigger outbursts and emotional and verbal fits" (Tr. 426). This condition is so extreme that plaintiff "is unable to have people in her life to even help her" (Tr. 430).

In rejecting this testimony the ALJ noted:

> Claimant's mother, Carol Campbell and her friend, Tiffany Segovia-King, stated in Lay Witness questionnaire that claimant had a lot of difficulty with mood swings and tendency toward angry outbursts, and isolation. In contradiction, medical records indicated claimant did not complain of symptoms or worsening symptoms at many of her doctor's appointments. Furthermore, claimant reported doing better with certain medications, and even attending education classes.

(Tr. 17, (*citing* Tr. 368, 371-72)).

Plaintiff claims that the reasons given by the ALJ for rejecting this lay testimony were insufficient (ECF No. 14, page 17-19). This Court agrees.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources[1], see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," see 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," see 20 C.F.R. § 404.1513(d)(3).

witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce, 557 F.3d at 1116 (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Here, the ALJ did not give "reasons germane to each witness" for rejecting the testimony. See Turner, supra, 613 F3d at 1224. Instead, the ALJ simply stated, in essence, that the testimony was "not supported by medical evidence in the record." See Bruce, supra, 557 F.3d at 1116. Following remand, the ALJ should re-examine all lay testimony and provide "reasons germane to each witness" for accepting or rejecting the testimony. See Bruce v. Astrue, 557 F.3d at 1115.

In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases).

Therefore, this Court recommends that this matter be remanded so that the ALJ can re-evaluate the lay testimony in conformity with these legal standards.

5.  The ALJ did not give clear and convincing reasons for rejecting plaintiff's testimony.

The plaintiff testified that although she had improved since 2007, she remained disabled and could not perform on a continuous basis. The ALJ rejected this testimony with the following statement:

> [Claimant] reported she attended college classes and takes care of her four children with help from her friend and her mother. Claimant alleged she continued to struggle with her emotions on a daily basis. However, her treatment records reflect that she went for long periods of time without expressing any needs or therapy [citation]. Claimant's activities of daily living are greater than one would expect for a person alleging disability.

(Tr. 16).

There are two problems with this conclusion. First, as noted in Section 1, the ALJ has failed to take into consideration whether or not there was a period of disability lasting for one continuous year prior to her improvement that would entitle her to some benefits. Second, the ALJ has not made specific findings related to how plaintiff's daily activities are transferable to employment.

Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair, supra, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Orn, supra, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ made no attempt to set forth specific findings relating to how plaintiff's daily activities were transferable. He relied on limited facts that she was attending some college classes and taking care of her children with the assistance of others. This is insufficient. On remand the ALJ should re-evaluate plaintiff's current ability in light of the above standards.

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 9, 2012, as noted in the caption.

Dated this 13th day of February, 2012.

J. Richard Creatura
United States Magistrate Judge